UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD BROOKMAN, JEFFREY BROOKMAN, and BARBARA BROOKMAN,<br><br>Plaintiff,<br><br>v.<br><br>TOWNSHIP OF HILLSIDE, *et al.*,<br><br>Defendants. | Docket No.: 09-cv-02178<br><br>OPINION |

## WILLIAM J. MARTINI, U.S.D.J.:

Plaintiffs Howard, Jeffrey, and Barbara Brookman bring this fourteen-count suit against various state and local government officials and entities for conduct related to their May 2007 arrests. The matter comes before the Court on the Defendants' motions for summary judgment. ECF Nos. 91-93. For the reasons set forth below, the motions are **GRANTED**.

### I. BACKGROUND

On May 9, 2007, Edgewood, New Jersey police officers arrested Plaintiffs Howard, Jeffrey, and Barbara Brookman ("Plaintiffs") after they discovered an elderly woman named Florence Siegel at Barbara Brookman's residence in need of medical care. Plaintiffs Barbara and Jeffrey (Barbara's son) were arrested for elder neglect. Jeffrey was released without being charged. Barbara was charged with and convicted of neglect. Her direct appeal of that conviction was dismissed. Plaintiff Howard Brookman was arrested for obstruction of justice. Howard's prosecution terminated when he completed New Jersey's Pre-Trial Intervention program.

Before their criminal cases concluded, Plaintiffs brought suit against various police officers, prosecutors, and government entities for violations of Plaintiffs' state and federal rights during their arrests, interrogations, and prosecutions. *See* Compl., ECF No. 1. After motion practice and delayed discovery, two groups of defendants remain: (1) the Union County Prosecutors Office ("UCPO") and Assistant Prosecutors David P. Shneider, Albert Cernadas, Jr., and Joshua F. McMahon (with UCPO, the "Prosecutor Defendants") and (2) the Township of Hillside ("Township"); the Hillside Police Department ("HPD"); Police Chief Robert Quinlan; Police Officers Matthew Ross, Matthew Cove, Tripoli (no first name provided), Javier De La Torre, A. Lomonte, and R. Floyd, and Detectives James Holmes and Gen Deo ("Officer Defendants," with the Township and HPD, "Hillside Defendants," and together with the Prosecutor Defendants, "Defendants"). The following claims remain:

1

| *Count* | *Claim* | *Defendant(s)* |
|---|---|---|
| Count 1 | Libel Per Se and Slander | Quinlan |
| Count 4 | 42 U.S.C. §§ 1983, 1985: False Arrest, False Imprisonment, and Malicious Prosecution | All Defendants other than Quinlan and Deo |
| Count 5 | 42 U.S.C. § 1983: Concealment of Evidence | Schneider, Cernadas, Cove, Holmes |
| Count 6 | 42 U.S.C. § 1983 and N.J.S.A. § 2C: 28-6: Fabrication of Evidence | Schneider, Cernadas, Cove, Holmes |
| Count 7 | 42 U.S.C. §§ 1983, 1985: Conspiracy and Obstruction of Justice | Schneider, Cernadas, Cove, Holmes |
| Count 8 | 42 U.S.C. §§ 1983, 1985; N.J.S.A. §§ 10:6-1, 5-1; N.J. Const. Art. 1 ¶¶ 1, 5, 7: Religious and Ethnic Discrimination | Ross, Cove, Tripoli, De La Torra |
| Count 9 | Spoliation of Evidence | Quinlin, Gen Deo, Township |
| Count 10 | Invasion of Privacy – False Light | All Defendants |
| Count 11 | Conversion of Property | "[T]he [O]fficers" |
| Count 12 | Assault and Battery | "[P]olice [D]efendants," including Tripoli and Ross |
| Count 13 | Intentional Infliction of Emotional Distress | All Defendants |
| Count 14 | Negligent Infliction of Emotional Distress | All Defendants |

## II. DISCUSSION

In three separate briefs, Defendants move for summary judgment on all of Plaintiffs' remaining claims. *See* ECF Nos. 91-93. Plaintiffs opposed, Pl. Opp., ECF No. 104, and Defendants replied, Reply Brs., ECF Nos. 105, 107-108. As the Prosecutor Defendants' and Hillside Defendants' arguments are largely distinct, their motions will be addressed separately.

### A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citation omitted). "The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (citation omitted).

2

"A party moving for summary judgment on an issue for which it bears the ultimate burden of proof faces a more difficult road . . . . In such a case, if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, summary judgment is inappropriate." *Donovan*, 661 F.3d at 185 (citation omitted).

### B. Claims Against the Prosecutor Defendants

Plaintiffs bring claims against the Prosecutor Defendants pursuant to 42 U.S.C. §§ 1983 & 1985 and various state laws. As Plaintiffs cannot overcome sovereign immunity, prosecutorial immunity, or the New Jersey Tort Claims Act's requirements to bring suit, summary judgment is **GRANTED** for the Prosecutor Defendants.

#### 1. *Sovereign Immunity Defense to 42 U.S.C. §§ 1983 & 1985 Claims*

The Prosecutor Defendants argue the Eleventh Amendment immunizes them from liability under 42 U.S.C. §§ 1983 & 1985 (Counts four-seven). "Under the Eleventh Amendment, an unconsenting State is immune from suits brought in federal courts by her own citizens. This immunity protects both states and state agencies as long as the state is the real party in interest." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). The protection also applies to suits against state officials in their official capacities. *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017). "[W]hen New Jersey county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Woodyard*, 514 F. App'x at 182 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996)). Therefore, so long as the allegations relate to the Prosecutors' "classic law enforcement functions," they are immune from official-capacity liability. *See id.*

Here, Plaintiffs allege four general categories of misconduct: (1) improper conduct in Grand Jury proceedings, including a failure to present complete, exculpatory, or balanced information and impermissible, dishonest testimony by the prosecutors; (2) failure to investigate before bringing the matter to the Grand Jury; (3) improper charging of Plaintiffs Howard and Barbara Brookman without probable cause; and (4) Schneider's other misconduct, including failure to recuse himself, solicitation of a false police report, and presentation of that report to the Grand Jury, "thereby suborning perjury." Compl. ¶¶ 9-18, 28, 34, 41-42, 48. This alleged misconduct all occurred in connection with Plaintiffs' own prosecutions. Therefore, the Prosecutor Defendants were engaged in "classic law enforcement functions," and were acting as officers of the state. *Woodyard*, 514 F. App'x at 182; *see also Beightler v. Office of Essex Cty. Prosecutor*, 342 F. App'x 829, 832 (3d Cir. 2009) (prosecutor's office "was undeniably engaged in a classic law enforcement function when it charged" defendant). As state officers, the Prosecutor Defendants are entitled to sovereign immunity. Accordingly, the Eleventh Amendment immunizes UCPO and the individual Prosecutor Defendants from suit in their official capacities. Summary judgment is **GRANTED IN PART** on that ground. *See Lewis*, 137 S. Ct. at 1291. However, Plaintiffs also bring unofficial-capacity claims against the individual Prosecutor Defendants. *See* Opp. at 5. Sovereign immunity is inapplicable to such claims. *See Lewis*, 137 S. Ct. at 1291. Thus, the Court must analyze whether another defense justifies summary judgment.

#### 2. *Prosecutorial Immunity Defense to 42 U.S.C. §§ 1983 & 1985 Claims*

The Prosecutor Defendants assert they are entitled to prosecutorial immunity.

3

> [S]tate prosecutors are absolutely immune from liability under § 1983 for actions performed in a judicial or quasi-judicial role. This immunity extends to acts that are intimately associated with the judicial phase of the criminal process, but does not encompass a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings. Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's "advocate" while engaging in the alleged conduct that gives rise to the constitutional violation.

*Munchinski v. Solomon*, 618 F. App'x 150, 153 (3d Cir. 2015) (cleaned up). Thus, to determine whether prosecutors are entitled to absolute immunity, courts examine the acts of alleged misconduct to "discern whether the Prosecutors were acting in a judicial or quasi-judicial role, or were instead performing administrative or investigatory functions." *Id.* (citation omitted).

Here, the acts of alleged misconduct by the Prosecutor Defendants were committed while the Prosecutor Defendants were acting as the State's advocate, not as an administrator or investigator. *See supra* Part II.B.1. As to the alleged failure to disclose exculpatory evidence, "[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). "Prosecutorial capacity" includes conduct in grand jury proceedings. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) (listing instances of absolute protection); *Rose v. Bartle*, 871 F.2d 331, 344 n.7 (3d Cir. 1989). As to the alleged improper charging decisions, prosecutors are immune from suits based on the initiation of criminal proceedings or failures to investigate before charging. *See Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001); *Jerrytone v. Musto*, 167 F. App'x 295, 300 (3d Cir. 2006). Even Schneider's alleged use of false testimony in the Grand Jury cannot give rise to individual liability. *See Yarris*, 465 F.3d at 139.

This leaves Defendant Schneider's failure to recuse himself and the alleged *solicitation* of the false police report. As to recusal, Plaintiffs complain that "Schneider's decision to involve himself *in the prosecution* of this case therefore constituted a conflict of interest in violation of the New Jersey Code of Ethics." Compl. ¶ 12 (emphasis adjusted). Given the allegation, any argument that the claim does not relate to Schneider's "prosecutorial capacity" is unpersuasive.

As to the alleged solicitation of a false police report, the Third Circuit analyzed similar allegations of misconduct in *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989). In that case, plaintiffs alleged prosecutors "attempted to get [plaintiff] to perjure himself in the grand jury proceedings" and "subjected other grand jury witnesses to similar efforts to solicit perjury in investigatory interviews and before the grand jury, and some of these witnesses actually did perjure themselves." *Id.* at 344. Despite the "investigatory" language, the court provided immunity, concluding that the "pleadings indicate that the alleged solicitations of perjury occurred in preparation for the grand jury proceedings, not in an investigatory capacity." *Id.* at 345. Here, like in *Rose*, Plaintiffs allege "Schneider, at the 'eleventh hour,' directed defendant Officer Cove to come up with a so-called 'supplementary investigation report' on September 17, 2007 more than *4 months* after the arrest in May 2007 and just one week before Schneider was to present this case to a grand jury." Compl. ¶¶ 15-17 (emphasis in original). Given the similarity to the

4

allegations in *Rose* (i.e., solicitation of false evidence to present to the Grand Jury), like in *Rose*, Schneider is entitled to prosecutorial immunity. *See* 871 F.2d at 345.

For these reasons, summary judgment is **GRANTED** on Plaintiffs 42 U.S.C. §§ 1983 & 1985 claims against the Prosecutor Defendants.

### 3. *Tort Claims Act Defense to State Law Claims*

In Counts Ten, Thirteen, and Fourteen, Plaintiffs assert liability against the Prosecutor Defendants under various New Jersey tort theories. The Prosecutor Defendants argue Plaintiffs' state law claims are barred because they failed to file a "notice of claim." UCPO Mot. at 15, ECF No. 91-4; McMahon Mot. at 17, ECF No. 92-1. In support, they submit a sworn declaration evidencing that Plaintiff never filed a notice with the UCPO. *See* Varady Cert., Ex. E, Sullivan Cert. ¶¶ 8-9, ECF No. 91-5. Plaintiffs respond, *without citation to any record evidence*, that they "and/or attorneys acting on their behalf submitted a notice of tort claim to the prosecutor's office." Opp. at 9; *see also* Pl. St. of Facts at 12, ¶ 9 (stating the same without citation).

Pursuant to the New Jersey Tort Claims Act ("TCA"), to bring a suit against public entities or employees under state law, plaintiffs must file a timely "notice of claim." *See* N.J.S.A. §§ 59:8-8-9; *Velez v. City of Jersey City*, 850 A.2d 1238, 1243 (N.J. 2004). If plaintiffs fail to do so, they are generally "forever barred from recover[y]." N.J.S.A. §§ 59:8-8.

Though the parties' briefs and supplemental statements of fact disagree on whether a notice of claim was filed, Plaintiffs do not point to any actual record evidence. The only *evidence* before the Court establishes that Plaintiffs never filed the required notice of claim. *See* Sullivan Cert. ¶¶ 8-9. Thus, there is no genuine issue of material fact on Plaintiff's state-law claims and summary judgment is **GRANTED** as to those counts. *See El*, 479 F.3d at 238. As summary judgment is granted on Plaintiffs 42 U.S.C. §§ 1983 & 1985 claims as well, the Prosecutor Defendants' motions for summary judgment are **GRANTED** in full.

### C. **Claims Against the Hillside Defendants**

Plaintiffs also assert various constitutional and state-law claims against the Hillside Defendants. Each live claim is addressed below.

### 1. *Libel per se and Slander (Count One)*

In Count One, Plaintiffs allege liability because "Quinlan issued a written press release and made verbal contact with members of the media" ("Press Release") in which he "made false claims regarding Howard [Brookman]." Compl. at 14. Specifically, Plaintiffs complain that Quinlan falsely stated "'Howard Brookman was arrested by Hillside Police May 9 and charged with neglecting a 92-year-old' woman" when Howard was never charged with neglect. *Id.* Plaintiffs also allege Quinlan falsely stated that emergency medical technicians ("EMTs") described the house as "squalid." *Id.* Defendants argue the press release was accurate.

"In any defamation action, the plaintiff bears the burden of establishing ... that the defendant (1) made a defamatory statement of fact (2) concerning the plaintiff (3) which was false, and (4) which was communicated to a person or persons other than the plaintiff." *Petersen v. Meggitt*, 969 A.2d 500, 507 (N.J. App. Div. 2009) (citation omitted). As Defendants argue the Press Release was accurate (and Plaintiffs will bear the burden at trial), Plaintiffs "must come forward with specific facts showing that there is a genuine issue." *Donovan*, 661 F.3d at 185.

5

Plaintiffs "cannot rest on mere pleadings or allegations," they "must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El*, 479 F.3d at 238.

Here, Plaintiffs fail to point to any evidence of the Press Release's falsity. The written Press Release actually states that the Brookmans were arrested "*in connection* with the neglect of a 92-year-old," not that Howard was *charged* with neglect, as written in the Complaint. *Compare* Hillside SoF Ex. G, ECF No. 93-2 (emphasis added), *with* Compl. at 14. Howard Brookman was literally arrested "in connection with" a neglect case (even though he was not charged with neglect), thus the statement is true and non-defamatory. *See Petersen*, 969 A.2d at 507. Plaintiffs have produced no evidence of any oral statements to the contrary either.

As to the "squalid" statement, Plaintiffs argue it "is not supported by the evidence," and thus summary judgment should be denied. Pl. Mot. at 5. However, it is not Defendants' job to support their previous statements with evidence. It is Plaintiffs' burden to evidence a statement's falsity. *See Petersen*, 969 A.2d at 507. Because Plaintiffs fail to do so, summary judgment is **GRANTED** on Count One.

### 2. *Invasion of Privacy – False Light (Count Ten)*

In Count Ten, Plaintiffs assert liability for Invasion of Privacy/False light. Other than incorporating Plaintiffs' entire Complaint, the only allegation is that "[i]n committing the above-described conduct . . . , defendants have invaded the privacy of plaintiff Howard by untruthfully portraying him in a false light." Compl. ¶ 64. As Plaintiffs' brief does not even mention this claim, the Court will assume the reference to Howard means the "above-described conduct" is the distribution of the allegedly false Press Release.

> [A] fundamental requirement of the false light tort is that the disputed publicity be in fact false, or else at least have the capacity to give rise to a false public impression as to the plaintiff. In other words, a false-light claim requires that the offending party make a major misrepresentation of plaintiff's character, history, activities, or beliefs.

*G.D. v. Kenny*, 15 A.3d 300, 319 (N.J. 2011). Plaintiffs bear the burden on each element. *See Williams v. Associated Press*, No. A-2840-00TI, 2001 WL 1346730, at *9 (N.J. Super. Ct. App. Div. July 13, 2001).

Here, Plaintiffs fail to produce any evidence of a "major misrepresentation" despite bearing the burden of proof. *See id.*; *supra* Part II.C.1. Accurately stating that Howard was arrested "in connection" with neglect is insufficient. As Plaintiffs failed to meet their burden, summary judgment is **GRANTED** on Count Ten.

### 3. *42 U.S.C. §§ 1983 & 1985 Claims*

#### a. **False Arrest, False Imprisonment, and Malicious Prosecution (Count Four)**

In Count Four, Plaintiffs assert liability against all Defendants except Quinlan and Deo for false arrest, false imprisonment, and malicious prosecution. *See* Compl. ¶¶ 22-30. The Court already dismissed Plaintiff Barbara's Count-Four claims. *See* Op. & Ord. (Oct. 24, 2017), ECF No. 46-47. As to Howard and Jeffrey, Defendants argue they had probable cause to arrest and

detain them, and thus are immune from liability. As to Howard's claims, Defendants also argue *Heck v. Humphry* precludes liability. *See Heck v. Humphrey*, 512 U.S. 477 (1994).

### i. *Heck v. Humphrey* bars Howard's false arrest, false imprisonment, and malicious prosecution claims.

In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .
>
> But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.

*Heck*, 512 U.S. at 486–87.

Here, Howard Brookman's malicious prosecution, false arrest, and false imprisonment claims are barred by *Heck*. As to the alleged malicious prosecution, a "cause of action . . . does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Id.* at 489. Thus, to bring a successful claim, Howard would have to prove the criminal proceedings against him terminated favorably. Howard's prosecution terminated when he completed New Jersey's Pre-Trial Intervention program ("PTI"). In *Fernandez v. City of Elizabeth*, the Third Circuit determined that "dismissal of criminal charges . . . under the PTI program" did not constitute a "favorable determination." *Fernandez v. City of Elizabeth*, 468 F. App'x 150, 154 (3d Cir. 2012). Thus, entry into PTI bars Howard's malicious prosecution claim under *Heck*.

*Heck* also bars Howard's false arrest and imprisonment claims. False arrest and imprisonment liability require an arrest without probable cause. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634, 636 (3d Cir. 1995). Here, Howard was arrested and detained for obstruction of justice in connection with his interference with Barbara's arrest. As the parties agree the conduct for which Howard was charged occurred in the Officer's presence, the only way the Officers lacked probable cause is if Howard was innocent of obstruction. *See* Hillside SoF Exs. at 42, ECF No. 93-2 (Howard "began physically interfering with our efforts to gain control over Ms. Brookman."); Pls. SoF Ex. C, Yellon Cert., ECF No. 104 ("At all times Howard stood in the beginning of the circular driveway . . and never attempted to approach the front door [or] his mother."). Thus, if successful, Howard's false arrest and imprisonment claims would "demonstrate the invalidity" of his sentence (i.e., entry into PTI). *See Heck*, 512 U.S. at 487. Accordingly, Howard's claims are barred and summary judgment is **GRANTED**.

### ii. Defendants had probable cause to arrest and detain Jeffrey for neglect, precluding liability.

Plaintiff Jeffrey Brookman's Count Four claims for false arrest and detention will fail if the Officers had probable cause. *See Groman*, 47 F.3d at 634, 646 (requiring plaintiff to show

7

police lacked probable cause). "While the probable-cause standard is incapable of precise definition or quantification, all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." *Wright v. City of Philadelphia*, 409 F.3d 595, 601–02 (3d Cir. 2005) (cleaned up). Probable cause exists if "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* at 602 (cleaned up). "[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Id.* Further, it is irrelevant to the probable cause analysis (1) weather the suspect actually committed a crime; (2) what crime is eventually charged; and (3) whether the suspect is later acquitted. *Id.* "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

Under New Jersey law:

> A person having a legal duty to care for or who has assumed continuing responsibility for the care of a person 60 years of age or older or a disabled adult, who abandons the elderly person or disabled adult or unreasonably neglects to do or fails to permit to be done any act necessary for the physical or mental health of the elderly person or disabled adult, is guilty of a crime of the third degree.

N.J. Stat. Ann. § 2C:24-8. Thus, the Officers had probable cause if they had reasonably trustworthy information from which a prudent person would conclude: (1) Ms. Siegel was neglected and (2) Jeffrey had a legal duty of care or had assumed continuing responsibility for Ms. Siegel's care.

Here, the only evidence before the Court demonstrates the Officers had probable cause to arrest and detain Jeffrey for neglect. In a police report, Officer De La Torre details how he was called to the Brookmans' residence on a case involving an elderly woman of unknown condition. *See* Hillside SoF Exs. at 35. He lists Jeffrey and Barbara as the grandson and daughter of the woman found, Florence Siegel. According to the report, officers entered a bedroom to find Ms. Siegal in the fetal position, wrapped in a blanket, conscious but unresponsive. *Id.* at 36. Ms. Siegel was dressed in a filthy sweater and the room smelled of urine. *Id.* EMTs found large bedsores on Ms. Siegel's buttocks and a large rash. *Id.*

Given Ms. Siegel's condition upon the Officer's arrival, they justifiably believed she had been "unreasonably neglect[ed]."[1] *See* N.J. Stat. Ann. § 2C:24-8. Therefore, they had probable cause to arrest Jeffrey if they reasonably believed he had an obligation to care for Ms. Siegel. *See id.*; *Wright*, 409 F.3d at 601–02 (requiring reasonable belief of guilt for probable cause).

---

[1] Plaintiffs argue that the police reports' descriptions are inaccurate. However, Plaintiffs rely on their briefing papers and pleadings, not *evidence*. *See* FRCP 56(c) (requiring citation to materials in the record). Plaintiffs did submit some evidence that Ms. Siegel had been sufficiently cared for, but even assuming that was true, the uncontested presence of bedsores was enough for the Officers to *reasonably believe* she was neglected. *See Wright*, 409 F.3d at 602 (requiring information sufficient to warrant a prudent man to believe an offense was being committed); Hillside SoF Ex. C (depicting injuries).

The uncontradicted evidence establishes the Officers reasonably believed Jeffrey had a legal duty or had assumed responsibility for Ms. Siegel's care. *See* N.J. Stat. Ann. § 2C:24-8. First, Jeffrey was present at the residence where the Officers found Ms. Siegel in her debilitated condition. Hillside SoF Ex. B. Given Jeffrey's presence with Barbara (Jeffery's mother), they reasonable believed he was Ms. Siegel's live-in grandson. *Id.* Second, Officers only made the arrest after "the EMTs attempted to ascertain the situation through Jeffrey" and he "became uncooperative." *Id.* Faced with (1) an elderly woman in need of medical care, and (2) an individual they believed to be her grandson who (3) became uncooperative when asked about her condition, the Officers reasonably believed Jeffrey had a "legal duty to care for" or had "assumed continuing responsibility" for Ms. Siegel. *See* N.J. Stat. Ann. § 2C:24-8. Thus, finding Ms. Siegel in an apparently neglected state, they had probable cause to arrest and detain Jeffrey for a short period. As the Officers acted with probable cause, they cannot be liable for false arrest and imprisonment, and summary judgment is **GRANTED** on Jeffrey's Count Four claims.[2]

### b. Concealment of Evidence (Count Five)

In Count Five, Plaintiffs allege Officer Cove and Detective Holmes (with the Prosecutors) "conspired to conceal three exculpatory police reports . . . from the Grand Jurors. . . . The Grand Jurors were entitled to be informed of the existence of said exculpatory police reports pursuant to New Jersey common law and the Fourteenth Amendment." Compl. ¶¶ 34-35. Defendants argue Plaintiffs fail to identify any evidence of wrongful concealment. Hillside Br. at 20.

Absent some obligation to provide exculpatory police reports to the Grand Jury, Defendants cannot be liable for their failure to do so. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere"). With respect to that purported obligation, the Supreme Court has stated:

> It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; *and to make the assessment it has always been thought sufficient to hear only the prosecutor's side.*

*United States v. Williams*, 504 U.S. 36, 51 (1992) (emphasis added). While New Jersey law may require the production of exculpatory evidence in certain circumstances, they are not present here. *See State v. Hogan*, 676 A.2d 533, 543 (N.J. 1996) (requiring (1) direct negation of guilt and (2) clearly exculpatory evidence). In any event, New Jersey state rules are not enforceable via Section 1983. *See Gonzaga Univ.*, 536 U.S. at 285 (requiring deprivation of federal rights). Therefore, summary judgment on Count Five is **GRANTED**.

---

[2] The Complaint vaguely asserts Jeffrey was maliciously prosecuted as well, but Plaintiffs appear to abandon that theory and the Court is unaware of any evidence (or even allegations) that would support a malicious prosecution claim for Jeffrey. *See generally* Compl. (noting once in passing that Jeffrey was charged with neglect); Opp. Br. (failing to defend any malicious prosecution claim by Jeffrey); *see also Backof v. New Jersey State Police*, 92 F. App'x 852, 856 (3d Cir. 2004) (requiring an absence of probable cause to initiate a criminal proceeding for malicious prosecution liability to attach).

9

### c. Fabrication of Evidence (Count Six)

In Count Six, Howard alleges Officers Cove and Detective Holmes "conspired to produce and describe to the grand jury a completely fabricated Fourth 'Supplemental Investigation Report' which was irreconcilably inconsistent with and directly contradicted what had been alleged in the three exculpatory police reports." Compl. ¶ 41. Defendants allegedly "understood that the fabricated report would be falsely misrepresented to the grand jurors," and thus violated Plaintiff Howard's Fourth and Fourteenth Amendment rights. *Id.* ¶ 42.

Officer Cove and Detective Holmes are absolutely immune from suit with respect to a conspiracy to present false testimony to the Grand Jury. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012) (finding witness immune from backdoor attempt to sue for false testimony). The actual fabrication of evidence can give rise to liability as a Fourteenth Amendment violation if such evidence "is used as a basis for a criminal charge that would not have been filed without its use." *Halsey v. Pfeiffer*, 750 F.3d 273, 292, 295 n.19 (3d Cir. 2014). However, like all Section 1983 claims, the Court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

Courts in this district have repeatedly held that a successful fabrication of evidence claim would "imply the invalidity" of a criminal conviction or sentence, and thus is barred by *Heck*. *See Ebuzor-Onayemi v. Union Cty. Police Dep't*, 16-cv-1869, 2017 WL 1377640, at *4 (D.N.J. Apr. 12, 2017), *aff'd*, 736 F. App'x 44 (3d Cir. 2018); *Echeverria v. Corvasce*, 13-cv-1852, 2014 WL 2094140, at *2 (D.N.J. May 20, 2014). The Third Circuit has specifically endorsed this application of *Heck* where plaintiffs allege defendants conspired to use false evidence to obtain a conviction. *Ebuzor-Onayemi v. Union Cty. Police Dep't*, 736 F. App'x 44, 46 (3d Cir. 2018).

Here, Howard alleges that Officer Cove conspired with Schneider to create the Fourth Supplemental Investigative Report, which was the only report used to indict Howard for obstruction. Compl. ¶¶ 34, 42. After being indicted, Howard agreed to enter PTI. Accordingly, a fabrication of evidence judgment in Howard's favor would imply the invalidity of his sentence (i.e., PTI). *See Ebuzor-Onayemi*, 736 F. at 46. Therefore, summary judgment is **GRANTED** as to Howard's Fabrication of Evidence claim (Count Six).

### d. Conspiracy and Obstruction of Justice (Count Seven)

In Count Seven, Plaintiffs allege Cove and Holmes (with the Prosecutors) "conspired . . . to deprive Plaintiff Howard of his constitutional rights by charging and prosecuting an innocent young attorney on charges of obstruction and hindering apprehension, charges which Defendants knew were not supported by probable cause." Compl. ¶ 48. This is not a claim for obstruction of justice, but malicious prosecution. For the same reasons summary judgment is granted as to Howard Brookman's malicious prosecution claims, summary judgment is **GRANTED** on Count Seven. *See supra* Part II.C.3.a.i.

### e. Religious and Ethnic Discrimination (Count Eight)

In Count Eight, Plaintiffs accuse Officers Ross, Cove, Tripoli, and De La Torra of acting "to deprive Plaintiffs of their Civil Rights in contravention of the New Jersey Civil Rights Act,

the New Jersey Law Against Discrimination, 42 U.S.C. §§ 1983 &1985 & the New Jersey State Constitution." Compl. ¶ 54. Plaintiffs accuse Officer Tripoli of questioning them regarding their religion and Officer Ross of threatening to injure them, referring to Plaintiffs' yarmulke derogatorily, and making racial slurs. *Id.* ¶¶ 55-57.

Defendants assert [t]here is no evidence . . . that any Defendant engaged in this conduct and . . . Jeffrey Brookman could not identify any officer who actually directed racial slurs at him." Hillside Br. at 21. Plaintiffs fail to reply to this argument in their brief. While their attached Statement of Facts repeats the allegations, it fails to cite any actual evidence of specific officers engaging in specific conduct. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3rd Cir. 2018) ("[I]n the face of motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial."); *El*, 479 F.3d at 238 (requiring actual evidence from nonmovant). Accordingly, summary judgment is **GRANTED** on Count Eight.

### 4. Section 1985 Conspiracy Claims

The above-described claims each assert liability pursuant to 42 U.S.C. § 1985 as well as 42 U.S.C. § 1983. Defendants argue they are entitled to summary judgment on the Section 1985 claims because Plaintiffs fail to produce any actual evidence of a conspiracy. Hillside Br. at 18. Defendants are correct. Plaintiffs produce no evidence of an actual conspiracy to deprive Plaintiffs of their rights, as required by Section 1985. *See Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (listing elements). Accordingly, summary judgment is **GRANTED** on Plaintiffs' Section 1985 claims.

### 5. Remaining State Law Claims

In the remaining counts (Nine and Eleven-Fourteen), Plaintiffs assert liability under spoliation, invasion of privacy, conversion, and intentional and negligent infliction of emotional distress theories. The Hillside Defendants argue the remaining claims should be dismissed for lack of evidence and pursuant to the New Jersey Tort Claims Act ("NJTCA").

#### a. Immunity Pursuant to the New Jersey Tort Claims Act

Pursuant to the NJTCA, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. Stat. § 59:3-3. To qualify for good faith immunity, a public employee must prove either "objective reasonableness" or that he acted with "subjective good faith." *Alston v. City of Camden*, 168 N.J. 170, 186, 773 A.2d 693 (2001) (citation omitted). However, good faith immunity will not attach "if it is established that [defendant's] conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. § 59:3-14. As good-faith immunity's application to this matter will vary by claim, each is taken in turn.

#### b. Spoliation of Evidence (Count Nine)

In Count Nine, Plaintiffs allege Chief Quinlan and Gen Deo (HPD's records clerk) are liable for spoliation of evidence because they received a timely letter to preserve certain video recordings but failed to do so. Compl. ¶¶ 59-62. Defendants assert they are entitled to qualified

immunity and, in any event, Plaintiffs fail to establish the necessary elements of a "spoliation" claim. Hillside Br. at 22-25.[3]

Plaintiffs fail to respond to Defendants' arguments. Their brief does not even mention Count Nine. *See generally* Opp. Br. Accordingly, Plaintiffs have waived their spoliation-based claim. *See Player v. Motiva Enterprises, LLC*, 240 F. App'x 513, 522 n.4 (3d Cir. 2007) (requiring party opposing summary judgment to identify evidence in the record that creates a genuine issue of material fact when movant points to lack of evidence). Summary judgment on Count Nine is thus **GRANTED**.

### c. Conversion and Assault and Battery (Counts Eleven and Twelve)

In Count Eleven, Plaintiffs allege Defendants are liable for conversion because "officers stole money, jewelry and personal property belonging to both Florence [Siegal] and Barbara." Compl. ¶ 66. In Count Twelve, Plaintiffs allege assault and battery liability because Officer Tripoli derogatorily questioned Plaintiffs regarding their religion while Officer Ross threatened to "bash their heads." Compl. ¶¶ 68-69. Defendants argue that Plaintiffs "have failed to establish any material facts sufficient to sustain their claims of conversion of property" or assault and battery. Hillside Br. at 27-29.

Plaintiffs fail to respond to Defendants' arguments or provide any evidence supporting their claims. Thus, summary judgment is **GRANTED** on Counts Eleven and Twelve. *See El*, 479 F.3d at 238 (requiring non-moving party to come forward with evidence); *Hernon v. Webb-McRae*, 116-cv-1512, 2018 WL 4204440, at *2 (D.N.J. Sept. 4, 2018) (collecting cases granting summary judgment when opposition brief fails to defend a claim).

### d. Intentional and Negligent Infliction of Emotional Distress (Counts Thirteen and Fourteen)

Counts Thirteen and Fourteen consist entirely of Plaintiffs incorporating their previous allegations by reference before concluding "defendants have intentionally [or negligently] inflicted severe emotional distress and anguish on Plaintiff." Compl. ¶¶ 70-73. Defendants assert immunity pursuant to the NJTCA and that Plaintiffs failed to establish "distress" to a sufficient level of severity (i.e., a sufficient injury). Hillside Br. at 23-24.

---

[3] Under New Jersey law, "spoliation" is not a separate cause of action, but "acts of spoliation by parties may give rise to the court's use of discovery and evidentiary sanctions and may support separate counts in the nature of fraudulent concealment claims." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1189 (N.J. 2008). A fraudulent concealment claim in the spoliation context requires: (1) that defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) that the evidence was material; (3) that plaintiff could not reasonably have obtained access to the evidence from another source; (4) that defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; (5) that plaintiff was damaged. *Id.* at 1188. Defendants argue Plaintiffs failed to produce evidence of the first and fourth elements. *See* Hillside Br. at 25.

Plaintiffs fail to respond to Defendants' arguments or provide any evidence of actionable injuries under an emotional distress theory.[4] Accordingly, summary judgment is **GRANTED** on Counts Thirteen and Fourteen.

### III. CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment, ECF Nos. 91-93, are **GRANTED**. An appropriate order follows.

July 23, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[4] Well past their filing deadline, Plaintiffs attempted to submit, *ex parte*, evidence they suffer from Post Traumatic Stress Disorder ("PTSD") as a result of Defendants' conduct. *See* Ord. (June 6, 2019), ECF No. 115. The Court will not consider this untimely evidence. Even if the Court were inclined to do so, the purported PTSD is not a cognizable injury for purposes of an emotional distress suit against Government entities and employees. *See Thomas v. E. Orange Bd. of Educ.*, 998 F. Supp. 2d 338, 355 (D.N.J. 2014) (holding Section 59:9-2(d) of the NJTCA provides defendants with immunity from liability for damages other than for treatment of *physical* injuries in excess of $3,600.). Regardless, Plaintiffs waived their emotional distress claims by failing to respond to Defendants' arguments. *See Hernon*, 2018 WL 4204440, at *2 (finding failure to respond constitutes abandonment or waiver of claims).

13